434 CITY OF OTTAWA *v.* SWEELY *et al.* [Sept. T.,

Statement of the case.

# THE CITY OF OTTAWA

*v.*

## JOHN SWEELY *et al.*

1. DAMAGES, EXCESSIVE—*for personal injury through negligence of city.* Where the plaintiff received a fall upon the sidewalk, in consequence of the negligence of the city authorities in keeping the same in proper repair, causing the loss of the use of her arm, from a gradual wasting away of the muscles, attended with constant pain, a verdict for $3200 damages was held not excessive as compensation for the actual injury sustained.

2. In cases of personal injuries arising from negligence in municipal corporations, the damages must be such as to afford compensation. They must be commensurate with the injury. For injuries to the person, it is extremely difficult, if not impossible, to fix any limit other than the character of the injury.

3. NEW TRIAL—*in cases of tort.* Verdicts in cases of tort are not beyond the control of the courts; but they should be allowed to stand, unless they are grossly erroneous, or there is a palpable misconception of the testimony, or they are the plain result of passion or prejudice.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action on the case, by the appellees against the appellant, commenced in the county court of La Salle county, and taken, by change of venue, to the circuit court of Grundy county.

The declaration alleged, in substance, that, on October 22, 1869, the defendant was, and for a long time had been, a corporation in La Salle county; that within the corporate limits of defendant there was, at the time, etc., a certain sidewalk along Main street; that it was the duty of defendant to keep and maintain said sidewalk in good order; but defendant, disregarding its duty in that respect, negligently allowed said sidewalk to become out of repair, and negligently allowed a certain plank in said walk to remain in a loose and dangerous condition; that on, etc., the plaintiff Hannah Sweely,

wife of the plaintiff John Sweely, while passing over and along said sidewalk, with reasonable care, stepped upon and against said plank, and was, without her fault, tripped and thrown with great violence, etc., and injured her person, arm and hand, and that, by reason of said injuries, she will lose the use of said arm and hand, to the damage of plaintiffs $15,000, etc.

Messrs. DICKEY, BOYLE & RICHOLSON, for the appellant.

Mr. E. F. BULL, and Mr. S. W. HARRIS, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This suit was brought to recover damages for injuries resulting from a fall occasioned by a defective sidewalk. The liability of the city to some judgment is proved beyond controversy. Negligence sufficient to create a liability, to some extent, is virtually conceded.

The question seriously, earnestly and ably urged upon our consideration, is as to the excessive amount of the verdict. We have read, with care and deliberation, the testimony, for the purpose of determining the fairness and justice of the finding.

There have been two trials before a jury. The first verdict was for $8300, when the court granted a new trial. The verdict at the last trial was for $3200. The able and learned judge below, who heard all the evidence, and who was fully cognizant of the feeling and interest, and capacity, of the several witnesses, and knew their means of information as to the particular injury, refused to disturb the verdict. Why should we do so? The power is conferred upon us by the statute, but it should be exercised with caution and prudence, and not arbitrarily.

It is said that the verdict must have been the result either of sympathy for the distressed woman, who exhibited her emaciated arm and hand before the jury, or of prejudice against the municipality.

Prejudice and passion should never influence the delibera-
tion or determine the conclusion of a jury; and if a court
can discover them lurking anywhere, the verdict should be
set aside.   There is none apparent in this case, unless it be
inferred from the amount of damages.

The injury, if the result of the fall, is the loss of the use
of an arm, perhaps during life.   If the condition of the hand
and arm is attributable wholly to the fall, is it true that the
damages are excessive?   How shall the loss sustained be
measured?   By what process, in arithmetic, shall we sum it
up?   Who would exchange an arm or a leg for the paltry
sum?   There is no absolute rule to guide; no basis upon
which to build; no principle which can control all cases.
The damages must be such as to afford compensation.   They
must be commensurate with the injury.   For injuries to the
person, it is extremely difficult, if not impossible, to fix any
limit, other than the character of the injury.   We should be
reluctant to hold that the sum given was excessive compensa-
tion for the loss of an arm.

It must not be supposed, however, that verdicts in cases of
torts are beyond control; but they should stand, unless they
are grossly erroneous, or there is a palpable misconception of
the testimony, or they are the result plainly of passion or
prejudice.

But it is strenuously contended that the woman, for years
prior to the injury, had in her hand progressive paralysis;
that it was incurable; that the treatment for it had only a
temporary effect; that the fall did not, and could not, cause
the present paralysis, and that the present condition of the
arm is the result of the former paralysis of the hand, and not
of the injury.   These positions are sustained, to a very great
extent, by the medical witnesses called by the defendant.  One
of them went so far as to deny, and express disbelief in, the
sworn statement of the party injured as to her soreness, be-
cause it was in opposition to his theory, built, as he said, upon

all the testimony that had been recorded, and upon his own observation and experience.

A very strong case, indeed, was established by these witnesses against any probable, if not possible, injury from the fall, if their theories are to be taken as truth. Can the theories be accepted as absolutely true? Can they be received to overthrow the positive and sworn statements of the injured party and her husband as to the pain and soreness of the affected part, consequent upon the fall? Is theory to be taken instead of actual sensation?

The medical witnesses testified as experts, and upon the supposition that the woman had paralysis for near four years before the fall upon the sidewalk; that she had not only lost the use of her hand, but it had become smaller than the other, and, to a certain extent, had withered away, and that there was a wasting of the muscles. Such was the supposititious case to elicit the opinions of the experts.

What were the facts as obtained from a witness who personally examined the party, and to whom she came for treatment just before the accident? For three years prior to this time there had been some want of action in the hand— an inability to grasp things. Dr. Olin, who saw her and treated her from two to four weeks, testified that, during the fall before the accident in October, the arm was full and the hand also—full muscular development of the parts—no atrophy—no wasting of the muscles of the arm or hand—nothing more than would be in a hand which was not used; and that there was a gradual and perceptible improvement under his treatment.

The experts testify upon the supposition that there was atrophy at the time of the fall, and that it is a necessary consequence of paralysis. This wasting of the muscles would, then, certainly have exhibited itself before the lapse of four years from the commencement of the affection.

One of the experts testified that paralysis, in and of itself, is not painful; another, that the books represent, as a general

rule, that it is not painful, but expressed his opinion that if the paralysis was not perfect, and the nerves of sensation were intact, it is liable, as any other disease, to have pain.

If the woman and her husband, and Dr. Olin, are to be credited, this was not a case of perfect paralysis, even after the fall, or there would have been no pain. The fall, then, must have improved and benefited the paralysis which existed before, according to theory. The direct testimony is that, before the injury, there was no sensation of pain; afterwards, it was constant.

The experts were forced to this dilemma. If the testimony was true, they must abandon their theory. Hence, they chose to adhere to theory, and deny any belief in the sworn statement of the woman who actually experienced the suffering, and the husband, who witnessed it. The theory adopted was that there must have been pain before the injury, as there could have been none afterwards, except of a temporary character. To maintain the theory, the witnesses must be pronounced perjured. We can not accept the conclusion.

There is, likewise, some discrepancy between the experts and their medical books, as they referred to them. They stated that if one part be totally paralyzed, the whole body would be the same; and if one part be partially paralyzed, the whole body would be the same; and that an injury to the arm, unless it severed the whole arm, and crushed it badly on all sides, could not produce paralysis of the arm; and that there is scarcely a probability of the cure of paralysis.

Yet medical books were referred to which speak of cases of paralysis which have been cured; and Dr. Stout admitted that good medical authority had reported cures of progressive paralysis; and Dr. Paul also testified that there are reported cases which had been cured.

Dr. Hand conceded that Dr. Hammond, in his work, reported the case of a faro dealer who had paralysis in his thumb and forefinger, from a long and continued use of them;

and also a case of paralysis, or partial paralysis, from standing on one leg for a long time.

It is useless further to recapitulate the evidence. In the midst of the uncertainty as to the probable effect of the fall, and the real character of the disease prior to the injury, we are unwilling to disturb the verdict.

The jury might well have applied the ancient proverb—

> "When Doctors disagree,
> Disciples then are free."

The judgment is affirmed.

*Judgment affirmed.*